The plaintiff has petitioned for rehearing "on the ground that it is probable that the court in its decision has arrived at an erroneous conclusion and overlooked important questions which were necessary to be considered in order to arrive at a full and proper understanding of the case; and on the ground that petitioner verily believes that the court upon such rehearing will come to different conclusions from those announced in its former decision."
Counsel argues at great length that the court erred in its conclusions on all points wherein the decision was adverse to plaintiff's contention. The matter of the quantity of hay destroyed we will not further consider, but briefly notice counsel's contention as to measure of the value of the hay.
The case is reported in 44 Pac. Rep. 423, in which, after thorough and deliberate consideration, we held that: "In the absence of a showing that it had any greater market *Page 178 
value where it was situated, its value in the Austin market, less the cost of transportation, must control."
The plaintiff tried the case in the court below upon the theory, and his counsel contended there and on appeal, and now contends in his petition, that, as the plaintiff had harvested and stored the hay for use in the event of the occurrence of a hard winter like that of 1889-90, in which he lost $100,000 worth of stock, and could have saved $50,000 worth with the amount of hay defendant destroyed, the true measure of the value of the hay is such a sum of money as it would require to place on plaintiff's ranch the same quantity and quality of hay as that destroyed. He claimed on appeal from the evidence that no hay of the same quality as that destroyed could be procured at any place nearer than Carson valley. There is no evidence in the record of what the cost would have been to have bought and shipped hay from that place to replace the hay destroyed. He argued that, taking Austin as the supply point, there must be added to the Austin market price the cost of transportation from Austin to plaintiff's ranch, and the difference between the value of the plaintiff's red-top hay and the common river hay sold at Austin, and thus he figures the value of the hay destroyed at $32 50 per ton.
While we may admit that the sum of $32 50 per ton is a correct result of his theory, there is no ingenuity of argument, however learnedly and lengthily it may be presented, that can cover up from the ordinary mind the fallacy of the theory as applied to the facts and circumstances of this case. The fact that the plaintiff only claimed $15 per ton in his complaint or was allowed only $10, or now claims only the latter sum, does not relieve his theory of its fallaciousness as a guide in arriving at the value of $10, or any other sum, per ton.
If the value of the destroyed hay is to be based on what the value of like quantity and quality would be for use in the contingency of such a winter as plaintiff claims, then $50,000 would not be an unreasonable valuation for it.
He testified and his counsel argues that he could have saved $50,000 worth of stock in the hard winter named with the amount of hay the defendant destroyed. If that be so *Page 179 
it is as probable that such amount and quality of hay would be worth that sum in the event of such another winter as that such winter will again occur. But as neither history nor tradition furnishes any evidence of the occurrence in the past of such another winter as that of 1889-90 within the borders of this state outside of the Sierra Nevada mountains, we are of opinion that such contingent value is not the criterion by which it is to be determined what the plaintiff's hay was worth in 1893.
Counsel informs us "that for the purpose of providing against future deep snows the stock farmers commenced in 1889-90, and continued every year since, to store up all the hay they could for such purpose." But we are not so informed by the record, or otherwise, except as to the plaintiff. If the theory or contention be true that red-top hay is worth $32 50 per ton for the purpose of storing for use in the event of the coming of a winter like that of 1889-90, and the farmers find it out, there ought to be great revival in the hay business. That the value of the hay destroyed was not $50,000 in the aggregate, or even $32 50 per ton, we think counsel will not deny; if not, he must admit that any theory of which either sum is the logical result as to the value must be erroneous, and should be discarded in this case.
Petitioner asks the court, in the event of its adhering to its conclusions heretofore arrived at, to terminate this litigation by ordering such judgment as it deems proper with the usual alternative that the plaintiff accept it or suffer a new trial. In view of the necessary costs and expenses to which the parties would be subjected by a new trial, we are inclined to grant the request.
Mr. Van Patton, defendant's witness and engaged in the livery business at Austin, testified that the market value of hay in bale in Austin was $12 per ton in the fall of 1893. Other witnesses gave the value at $10 to $12. Exhibit 6 in evidence, being a schedule of railroad freight rates, gives the rate of $3 per ton for hay from "Canyon and Vaughn's and points between to Austin." Walter's, or plaintiff's ranch, is between Canyon and Vaughn's. There is no siding at Walter's, hence hay at plaintiff's ranch would have to be hauled by wagon to Canyon or Vaughn's, where there are *Page 180 
sidings, for shipment by rail to Austin. Canyon is the nearest station and distant three or four miles from plaintiff's ranch, or Walter's station.
We find no evidence as to the cost of hauling hay from Walter's to either siding, but plaintiff's counsel in his brief put it at $1 per ton from the siding to the ranch. So we will consider $1 per ton reasonable cost for hauling from the ranch to the siding where it could have been loaded on the cars. It is in evidence that the rate for hauling general merchandise from the Austin depot into town is $2 50 per ton, and that the cost of baling hay was about $2 per ton. Taking the above items of cost as approximately correct for putting hay into the Austin market from plaintiff's ranch the total cost would be $8 50 per ton. As there is evidence tending to show that the plaintiff's hay was worth more than the common river hay sold in Austin, we are of opinion that it is reasonable to conclude that his hay was worth the highest market price, $12 per ton.
We are of the opinion that the evidence would sustain a finding of a net market value of $3 50 per ton, and no more. The evidence is that the hay press cost $80 in Caleco, Lake valley, and the value of the labor in hauling it to his ranch the plaintiff puts at $25 or $30. We are of opinion that the evidence would support a finding of $110 as the value of the press, and no more. The $100 damages assessed for injury to the meadow land we think the evidence justifies.
We are of opinion that the plaintiff is entitled, under the evidence and the law applicable to the case, to a judgment for the value of 697.6 tons of hay, at $3 50 a ton; for the value of the hay press, $110, and for damages to the meadow land $100, amounting to $2,651 60, with legal interest from date of original judgment, besides the cost of suit, taxed at $1,289 70 in court below.
The judgment of this court herein is modified so as to read as follows:
It is therefore ordered that the plaintiff have twenty days from the filing hereof to file in this court a release of all damages claimed in this action, except the sum of $2,651 60, with legal interest thereon from April 10, 1895, till paid, and *Page 181 
that upon filing such release in due form within said twenty days, the judgment of the trial court be affirmed in said sum of $2,651 60, with interest as aforesaid, and costs of the court below in the sum of $1,289 70; but in default of filing such release that the judgment of the district court and the order denying a new trial be reversed and a new trial granted. And it is further ordered that appellant recover its costs on appeal.
Ordered, that the remittitur be stayed fifteen days to give appellant time to petition for rehearing if it desires to do so.
 ON PETITION FOR REHEARING.